# EXHIBIT A

# EXHIBIT A

STATE OF ARIZONA
DEPT. OF INSURANCE

AUG 10 2012

TIME
SERVICE OF PROCESS

Michael J. Raymond (009272)
**Raymond, Greer & Sassaman, P.C.**
3636 North Central Avenue, Suite 1070
Phoenix, Arizona 85012-1940
(602) 274-0500
mjr@rgslaw.net

Attorneys for Plaintiff

# SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

PATRICIA A. GROTH, an individual,

                Plaintiff,

vs.

OWNERS INSURANCE COMPANY, a
Michigan corporation,

                Defendant.

No. CV2012-012045

**SUMMONS**

THE STATE OF ARIZONA TO THE DEFENDANT:

OWNERS INSURANCE COMPANY
c/o Arizona Department of Insurance
Business Services
2910 North 44th Street, Suite 210
Phoenix, Arizona 85018-7269

     **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within twenty (20) days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona — whether by direct service, by registered or certified mail, or by publication — you shall appear and defend within thirty (30) days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of forty (40) days after the date of such service upon the Director.

Service by registered or certified mail without the State of Arizona is complete thirty (30) days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete thirty (30) days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete thirty (30) days after filing the Affidavit of Compliance and return receipt or Officer's Return. Rule 4, Arizona Rules of Civil Procedure; A.R.S. §§ 20-222, 28-502, 28-503.

**YOU ARE HEREBY NOTICED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

**YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiff's attorney. Rule 10(d), Arizona Rules of Civil Procedure; A.R.S. § 12-311; Rule 5, Arizona Rules of Civil Procedure.

**Requests** for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three judicial days in advance of a scheduled court proceeding.

The name and address of Plaintiff's attorney is:

Michael J. Raymond
Raymond, Greer & Sassaman, P.C.
3636 North Central Avenue
Suite 1070
Phoenix, Arizona 85012-1940

**SIGNED AND SEALED** this date: _____

CLERK **COPY**

By_____ AUG - 8 2012

Deput MICHAEL K. JEANES, CLERK
S. DONAHOE
DEPUTY CLERK

2

1    Michael J. Raymond (009272)
2    **Raymond, Greer & Sassaman, P.C.**
     3636 North Central Avenue, Suite 1070
3    Phoenix, Arizona 85012-1940
     (602) 274-0500
4    mjr@rgslaw.net

**COPY**

AUG – 8 2012



MICHAEL K. JEANES, CLERK
S. DONAHOE
DEPUTY CLERK

5    Attorneys for Plaintiff

6                    SUPERIOR COURT OF ARIZONA

7                         MARICOPA COUNTY

8                                              CV 2012-012045

9    PATRICIA A. GROTH, an individual,        No.

10                            Plaintiff,       COMPLAINT

11         vs.                                 (Declaratory Relief Re: Duty to
                                               Indemnify; Supplemental
12   OWNERS INSURANCE COMPANY, a               Relief)
     Michigan corporation,
13
                              Defendant.
14

15

16        For her Complaint for declaratory relief regarding the duty to indemnify

17   and for supplemental relief under A.R.S. § 12-1838, Plaintiff Patricia A. Groth

18   ("Groth") alleges as follows:

19        1.    Groth is an individual who at all pertinent times hereto resided in

20   Lake Havasu City, Mohave County, Arizona.

21        2.    Groth brings this claim in her own right as assignee to the rights of

22   SunMeadow Homes, Inc. ("SunMeadow") an Arizona corporation.

23        3.    Owners Insurance Company ("Owners") is a Michigan corporation

24   authorized to conduct the business of insurance in Arizona.

25        4.    At the time of the events that gave rise to this dispute, Owners

26   conducted business in Maricopa County, Arizona and adjusted the claim

1   brought by Groth against Owners' insured, SunMeadow, from its local office
2   located in Mesa, Maricopa County, Arizona. As such, venue is appropriate for
3   the Superior Court, Maricopa County, pursuant to A.R.S. § 12-401(18).

4        5.    A controversy exists between Groth, an assignee of SunMeadow and
5   Owners involving the insurance issues described below. As such, declaratory
6   relief, as requested herein, is brought pursuant to A.R.S. § 12-1831, *et seq.*

7        6.    Groth further requests supplemental relief pursuant to A.R.S. § 12-
8   1838. Supplemental relief includes a request for judgment against Owners in
9   favor of Groth for the amounts set forth in the stipulated partial judgment
10  against SunMeadow entered on April 16, 2012 in Mohave County Superior
11  Court, CV2007-2059 ("underlying judgment").

12  <center>**GENERAL ALLEGATIONS**</center>

13       7.    Groth and SunMeadow were adverse parties arising out of a lawsuit
14  filed by Groth against SunMeadow in Mohave County Superior Court, CV-2007-
15  2059 ("underlying litigation").

16       8.    The underlying litigation arose from alleged construction defects at
17  a one-story, single family home now owned by Groth, located at 3318
18  Candlewood Drive, Lake Havasu City, Arizona ("home").

19       9.    The home was constructed by SunMeadow. A certificate of
20  occupancy for the home was issued on April 12, 2000.

21       10.    On February 20, 2001, SunMeadow executed a warranty deed
22  conveying the real property on which the home was located to the original
23  homeowner.

24       11.    In constructing the home, SunMeadow hired a rough grading
25  subcontractor responsible for soil compaction as well as a concrete subcontractor
26  responsible for laying the foundation for the home.

<center>-2-</center>

12.   The underlying complaint alleged that the work of SunMeadow's contractors fell below applicable construction standards as required by applicable building codes and resulted in certain construction defects.

13.   The construction defects and the resulting property damage alleged included: (1) the presence of low dust density (loose) self-grade fill soils in the top 30 inches of the sub-grade beneath the home; (2) cracking of the home's concrete floor slabs and tile floors; (3) drywall cracking; and (4) insufficient strength of the concrete floor slab.

14.   The construction defects caused incremental, continuous, and progressive property damage to the home from and after April 12, 2000.

15.   On September 17, 2009, Foundation Stabilization, Inc. prepared a report outlining the construction defects and damage, and estimated the cost of repairs to the home at $218,130. The estimate did not include the costs of replacing patio concrete, sidewalk, fence walls, patio walls, or landscaping. It did not include removal of furniture, storage or relocation costs.

16.   SunMeadow tendered its defense of the underlying litigation to Owners, who insured SunMeadow under several consecutive commercial general liability policies in force from June 1999 through October 2008 ("policies").

17.   On December 18, 2007, Owners agreed to defend SunMeadow in the underlying litigation pursuant to a reservation of rights.

18.   On July 28, 2011, counsel for SunMeadow gave notice to Owners of its intent to enter into a *Morris* Agreement with Groth.

19.   In response, Owners refused to withdraw its reservation of rights and instead issued a modified reservation of rights on August 4, 2011.

-3-

20. Groth and SunMeadow then entered into a reasonable partial stipulated judgment in favor of Groth, a covenant not to execute against the assets of SunMeadow, and an assignment of SunMeadow's rights against Owners ("Morris Agreement"). A true and correct of the Morris Agreement is attached as Exhibit "1".

21. Pursuant to the Morris Agreement, on April 16, 2012 a stipulated partial judgment was entered in favor of Groth and against SunMeadow in the amount of $234,210.92. The remaining portion of the case that was not subject to the stipulated judgment settled and was dismissed on July 31, 2012.

## COUNT I

### (Declaratory Judgment/Supplemental Relief)

22. Groth incorporates each and every allegation as contained in paragraphs 1 through 21 as if fully set forth herein.

23. Pursuant to the Owners policy and/or policies issued to SunMeadow, Owners had an obligation to indemnify SunMeadow for the claims asserted against SunMeadow in the underlying litigation.

24. Owners refused to agree to indemnify SunMeadow for certain claims and damages in the underlying litigation, which freed SunMeadow from the cooperation clause of the policy, and allowed SunMeadow to enter into the Morris Agreement.

25. A dispute has arisen and an actual controversy exists between Groth and Owners in that Groth, as assignee of SunMeadow, contends she is entitled to coverage under the Owners policies and that Owners is obligated to satisfy the judgment entered against its insured and in favor of Groth. Owners denies such obligation.

-4-

26.   Groth seeks a declaration as to the parties' respective rights, as well as Owners' duties and obligations, including the duty to indemnify under its policies, and a judgment in her favor as to Owners' obligations to provide coverage for the underlying claims.

27.   Pursuant to A.R.S. § 12-1838, Groth seeks supplemental relief, i.e., that a money judgment be awarded in favor of Groth and as against Owners for the full amount of the underlying stipulated judgment.

WHEREFORE, Groth prays for judgment against Defendant Owners, as follows:

A.   Declaring that SunMeadow is entitled to insurance coverage for the damages that are subject to the stipulated judgment in the underlying litigation under the policy/policies issued to it by Owners;

B.   Declaring that Owners has an obligation to indemnify SunMeadow under its policy and/or policies of insurance for the stipulated judgment;

C.   For supplemental relief, including a judgment in favor of Groth and against Owners in the sum of $234,210.92, plus interest;

D.   For an award of Groth's attorney's fees and taxable costs in pursuing this claim; and

E.   For such other relief as the Court deems reasonable, just and proper.

DATED this 8th day of August 2012.

RAYMOND, GREER & SASSAMAN, P.C.

By _____
Michael J. Raymond
3636 North Central Avenue
Suite 1070
Phoenix, Arizona 85012
Attorneys for Plaintiff

-5-

# EXHIBIT 1

## SETTLEMENT AGREEMENT, COVENANT NOT TO EXECUTE AND ASSIGNMENT

This Settlement Agreement, Covenant Not to Execute and Assignment ("Agreement") is entered into between Patricia A. Groth ("Groth") and Sunmeadow Homes, Inc. ("Sunmeadow"). Groth and Sunmeadow are collectively referred to herein as (the "Parties").

### RECITALS

A.     Groth and Sunmeadow are adverse parties arising out of a lawsuit filed by Groth against Sunmeadow in Mohave County Superior Court, CV-2007-2059 ("underlying litigation").

B.     The dispute arises from construction defects in a one-story, single-family home now owned by Groth, located at 3318 Candlewood Drive, Lake Havasu City, Arizona 86406 ("Home"), and constructed by Sunmeadow. A Certificate of Occupancy for the Home was issued on April 12, 2000, and as such, Sunmeadow's work on the Home was completed no later than April 12, 2000. On February 20, 2001, a Warranty Deed was executed conveying the real property on which the Home is located, from Sunmeadow to the original homeowner. As such, as of February 20, 2001, Sunmeadow did not own or occupy the real property on which the Home is located.

C.     In constructing the Home, Sunmeadow hired a rough grading subcontractor responsible for soil compaction as well as a concrete subcontractor responsible for laying the foundation for the Home. The work performed by

1



Sunmeadow's contractors fell below applicable construction standards as required by applicable building codes, and resulted in certain construction defects. These construction defects caused property damage to the Home. The construction defects and the resulting property damage include: the presence of low dust density (loose) self-grade fill soils in the top 30 inches of the sub-grade beneath the Home; cracking of the Home's concrete floor slabs and tile floors; cracking of the drywall in the Home; and insufficient strength of the concrete floor slab. All such defects resulted in continuous and progressive property damage to the Home from and after April 12, 2000 through present.

D.      On September 17, 2009, Foundation Stabilization, Inc. prepared a report outlining the construction defects, the resulting property damage, and an estimate of the cost of repair of the property damage to the Home at $218,130. The estimate did not include the costs of replacing patio concrete, sidewalk, fence walls, patio walls, or landscaping. It did not include removal of furniture or relocation costs.

E.      Sunmeadow tendered its defense of the underlying litigation to Auto-Owners Insurance Company ("Auto-Owners"), who insured Sunmeadow under several consecutive commercial general liability policies in force from June 1999 through October 2008 ("Policies"). On December 18, 2007, as amended on August 26, 2008, Auto-Owners agreed to defend Sunmeadow in the underlying litigation pursuant to a reservation of rights. A true and correct copy of the two reservation of rights letters are attached as Exhibit "A" ("Reservation of Rights").

F.    Sunmeadow provided notice to Auto-Owners of its intent to enter into a Morris Agreement. In response, on August 4, 2011, Auto-Owners issued a third letter to Sunmeadow ("Limited Reservation of Rights", a copy of which is attached hereto as Exhibit B) withdrawing its Reservation of Rights as to the following claims of damage asserted by Groth:

| | |
|---|---|
| Repair and reinstall cabinets | $2,500 |
| Replace carpet and floor tile | $6,400 |
| Repair cracked drywall | $1,200 |
| Paint inside of house | $2,200 |

G.    Groth and Sunmeadow wish to resolve those claims of Groth against Sunmeadow that remain subject to Auto-Owners' Reservation of Rights by means of a stipulated judgment in favor of Groth, a covenant not to execute against the assets of Sunmeadow, and an assignment of Sunmeadow's rights against Auto-Owners pursuant to the principles set forth in *USAA v. Morris*, 154 Ariz. 113 (1987) ("Morris Agreement").

## AGREEMENT

1.    Sunmeadow agrees that it has provided Auto-Owners advance written notice of its intent to enter into a Morris Agreement with Groth, and an opportunity for Auto-Owners to withdraw its Reservation of Rights by way written notice dated July 28, 2011. Sunmeadow represents that Auto-Owners failed to withdraw the Reservation of Rights except to the extent set forth in the Limited Reservation of Rights.



2.   Terms and Conditions.   For good and valuable consideration, Groth and Sunmeadow agree to the following terms and conditions:

(i)   Sunmeadow shall immediately pay to Groth the sum of S7,500.00, which sum is the total amount of monies received by Sunmeadow in settlement of its third-party claims.

(ii)   Contemporaneous with the execution of this Agreement, Groth and Sunmeadow will stipulate to a partial judgment ("Stipulated Judgment") in the amount of $ 234,210.92, representing the following damages, attorneys fees and costs:

| | | |
|---|---|---|
| A. | Remove and replace concrete floor slab: | $50,000.00 |
| B. | Replace and re-plumb plumbing: | 15,000.00 |
| C. | Northwest Soil Stabilization: | 99,000.00 |
| D. | Foundation Stabilization, Inc. Design/Specs: | 22,000.00 |
| | Subtotal: | 186,000.00 |
| E. | 10% Contract Management Fee: | 18,600.00 |
| F. | Attorneys Fees and Costs: | 37,110.92 |
| | Total Damages and Attorneys Fees/Costs: | _____ |
| | Less Credit for Payment of third party claims held in escrow: | [7,500.00] |
| | Amount of Judgment: | S234,210.92 |

plus interest at the rate of 10% per annum from the date Judgment is entered until paid.  The Parties specifically agree that this sum reflects the reasonable



amount of damages, costs, and attorneys' fees for which Sunmeadow would be liable to Groth if the underlying litigation proceeded to trial.

(iii)   With respect to those Groth's claims that remain subject to Auto-Owners' Reservation of Rights, Sunmeadow hereby assigns to Groth those rights and interests it has in the Auto-Owners Policies and those claims (both contractual and in tort, including claims for breach of the covenant of good faith and fair dealing) against Auto-Owners arising out of its refusal to withdraw the Reservation of Rights, specifically as it relates to the failure to acknowledge coverage for those claims of Groth that remain subject to Auto-Owners' Reservation of Rights ("Assigned Claims"). Sunmeadow shall retain for itself all of the rights, interest and claims it may have against Auto-Owners with respect to those claims of Groth for which the Reservation of Rights was withdrawn by the Limited Reservation of Rights ("Retained Claims").

(iv)   Sunmeadow and its representatives and/or attorneys agree to reasonably cooperate with Groth in all future proceedings against Auto-Owners which relate in any way to the Assigned Claims.

(v)   In consideration of and reliance upon the foregoing, Groth agrees that she shall not execute upon, record, or otherwise attempt to collect on the Assigned Claims or Stipulated Judgment from Sunmeadow in any manner, including, but not limited to, proceedings in garnishment, attachment, or similar proceedings against any assets or holdings of Sunmeadow. The Parties hereby



agree and stipulate that any such Stipulated Judgment shall be satisfied only out of the proceeds from the Assigned Claims.

3.      The Parties also represent and warrant that: (a) each is fully authorized to enter into this Agreement; (b) each has read and fully understands each provision of this Agreement; (c) each has relied on the advice and representation of its own legal counsel with respect to the matters set forth herein; (d) each has signed the Agreement voluntarily, without any duress or undue influence on the part, or on the behalf, of any party; and (e) each acknowledges that the terms of this Agreement are contractual and not mere recitals.

4.      This Agreement is entered into and shall be governed, construed, and interpreted in accordance with substantive and procedural laws and rules of the State of Arizona.   Any action brought to enforce the provisions of this Agreement shall be commenced, prosecuted, and defended exclusively in the Superior Court for the State of Arizona, either in Mohave or Maricopa County.

5.      In the event that any provision or part of this Agreement is held to be void, voidable, or unenforceable, such provision shall be fully severable and the remaining portions shall remain in full force and effect.

6.      The underlying litigation shall proceed only as to the Retained Claims.

Dated this ___ day of November, 2011.



_Patricia A. Groth_

Patricia A. Groth

STATE OF ARIZONA        )
                        ) ss:
County of ~~Maricopa~~   )
        Mohave

SUBSCRIBED AND SWORN TO before me, the undersigned

Notary Public, this 16th day of March 2012, ~~2011~~, by Patricia A. Groth.

NANCY A. LANGEN
NOTARY PUBLIC - ARIZONA
MOHAVE COUNTY
My Commission Expires
July 31, 2015

Notary Public

My Commission Expires:

July 31 2015

SUNMEADOW HOMES, INC.

By: _____
    RALPH ROBERTSON

Its: PRESIDENT.

STATE OF ARIZONA        )
        Mohave          ) ss:
County of ~~Maricopa~~   )

SUBSCRIBED AND SWORN TO before me, the undersigned

Notary Public, this 15th day of February, 2011, by Ralph Robertson

_____, on behalf of Sunmeadow Homes, Inc.

OFFICIAL SEAL
LAURIE HELLER
Notary Public - State of Arizona
MOHAVE COUNTY
My Comm. Expires March 23, 2012

Notary Public

My Commission Expires:

3/23/2012

APPROVED AS TO FORM AND
CONTENT:

Gary Linder
Attorney for Sunmeadow Homes, Inc.

Michael J. Raymond
Attorney for Patricia A. Groth

EXHIBIT A



AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

PO Box 10096, Mesa, AZ 85216-0096
Phone (480) 830-7119 X 217
Fax (480) 830-8794
email:decker.carolyn@aoins.com

December 18, 2007

Sun Meadow Homes Inc
PO Box 2683
Lake Havasu City, AZ  86405
Attn: Ralph Robertson

CERTIFIED MAIL

RE:    Insured:          Sun Meadow Homes
       Claim:            45-4732-07
       Date of Loss:     2000-2007
       Claimants:        Patricia Groth
       Policy:           4552265302 and 41084307
       Policy Period:    6-22-00 to 6-22-05 and 10-05-07 to 10-05-08

Dear Mr. Robertson

As you are aware, a suit has been filed against your company by Homeowner Patricia Groth. We understand this suit involves damages due to potential soil issues, grading issues, concrete slab issues and other damages as alleged in the suit.

Auto-Owners Insurance insures Sun Meadow Homes under two different policies under a Commercial General Liability policy with effective dates of  6-22-00 to 6-22-05 and 10-05-07 to 10-05-08. The property damage products completed operations aggregate for these policies are $ 1,000,000 per policy..

The Complaints alleges the following::

   1.   Breach of Warranty ( Habitability)
   2.   Breach of Warranty ( Workmanship)
   3.   Property Damage

As this is the first notice of loss, our investigation has just started. Because there is potential for an occurrence causing property damage within the policy terms and conditions, there may be coverage for the defense and indemnity of this action. However, there may be allegations, if proven, that may not be covered, because they do not meet the terms and conditions of the policy.

For example, if the work done by the insured is proven to be defective, the actual work done by the insured would not be covered. However, if this work was defective, causing consequential damages, then perhaps we have an occurrence causing property damage under the policy.

The investigation of this matter has been undertaken under a Full Reservation of  Rights which follows. I refer you to the enclosed policy form CG 00 01.(11-88)

*~ Serving Our Policyholders and Agents for More Than 90 Years ~*

## RESERVATION OF RIGHTS

The Bodily Injury and Property Damage liability coverage contains the following provisions:

SECTION I – COVERAGES / COVERAGE A.

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this
   Insurance applies. We will have the right and duty to defend any "suit"
   Seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But...

      (1) The amount we will pay for damages is limited as described in Limits of Insurance (Section III); and

      (2) Our right and duty to defend ends when we have used up the Applicable limit of insurance in the payments of judgment or Settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered Unless explicitly provided under Supplementary Payments - Coverages A and B.

   a. This insurance applies to "bodily injury" and "property damage" only if
      (1) The "bodily injury" of "property damage" is caused by an "occurrence" that takes place in the coverage territory", and
      (2) The "bodily injury" or "property damage" occurs during the policy period.

   a. Damages because of "bodily injury" include damages claimed by any
   Person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. Exclusions.

   This insurance does not apply to;

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement. ...

   j. "Property damage" to:

      (1) Property you own, rent or occupy:

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises

(3) Property loaned to you;

(4) Property in the care , custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are ":your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your Work" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of a sudden and accidental physical injury to "your product" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, re-placement, adjustment, removal or disposal of:

(1) "Your product";
(2) "Your work"; or
(3) "Impaired property"

if such product, work or property is withdrawn or recalled from the market from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

SECTION V-DEFINITIONS

5.   Impaired property" means tangible property, other than "your product" or" your
work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient,
      inadequate or dangerous, or

    b.  You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your
      Work"; or

    b.  Your fulfilling the terms of the contract or agreement.

1.   "Insured contract" means:...

    b.  A sidetrack agreement;...

    c.  An obligation, as required by ordinance, to indemnify a municipality,
      Except in connection with work for a municipality;...

    An "insured contract" does not include that part of any contract or agreement:

    a.  That indemnifies any person or organization for "bodily injury" or "property damage" arising out
      of construction or demolition operations, within 50 feet of any railroad property and affecting any
      railroad bridge or
      Trestle, tracks, road-beds, tunnel, underpass or crossing;

    a.  That indemnifies an architect, engineer or surveyor for injury of damage arising out of:

        (1)  Preparing, approving or failing to prepare or approve maps, drawings, opinions,
            reports, surveys, change order, designs or
            specifications; or

        (1)  Giving directions or instructions, or failing to give them, if that is
            The primary cause of the injury or damage:

    a.  Under which the insured, if an architect, engineer or surveyor, assumes
      Liability for any injury or damage arising out of the insured's rendering or failure to render
      professional services, including those listed in b. above and supervisory, inspection or engineering
      services; or

    a.  That indemnifies any person or organization for damage by fire to premises rented or loaned to
      you. ...

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same
    harmful conditions. ...

11.a. "Products completed operations hazard" includes all "bodily injury" and
    "property damage" occurring away from premises you own or rent and arising out of "your product" or
    "your work" except:

(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.

a.  "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.
(2) When all the work to be done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

12."Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss will be deemed to occur at the time of the physical injury that caused it; or
b.  Loss of use of tangible property that is not physically injured. All such losses shall be deemed to occur at the time of the "occurrence" that caused it. ...

14. "Your product" means:

a.  Any goods or products, other than real property, manufactured, sold , handled, distributed or disposed of by:

(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and
b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product " includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
b.  The providing of or a failure to provide warnings or instructions.

15. " Your work" means:

a.  Work or operations performed by you or on your behalf; and
b.  Materials, parts or equipment furnished in connection with such work or operations.

" Your work" includes:

a.  Warranties or representations made at any time with respect to the Fitness, quality, durability, performance or use of "your work"; and

b.  The providing of or failure to provide warnings or instructions.

Please note that your policy contains the following Exclusion:

Endorsement 55209 (1-01)

THIS ENDORSMEENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

EXCLUSION – COMPLETED OPERATIONS –PROPERTY DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I – COVERAGES, COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LAIBILITY, 2. Exclusions, exclusion 1. is deleted and replaced by the following:

    2.Exclusions

        1." Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    All other policy terms and conditions apply.

We therefore reserve our rights as to a later denial of defense or indemnity, or both if it is determined that no coverage applies to this matter.

Auto Owner's continuing investigation and defense is in no way intended to waive any provisions of the policy.

Further, Auto Owners reserves its rights to assert additional reservations of rights as may be warranted by disclosure which develop in the continuing investigation and discovery of this case.

Additionally, Auto Owners does not waive the rights to later seek reimbursement of any defense costs in circumstances when no duty to defend exists or indemnity payments it makes on behalf of the insured if it is determined that the claims involved in this case are excluded from coverage.

All rights, terms, conditions and exclusions in your policy are in full force and effect and are completely reserved.

If you have any questions regarding this matter, please feel free to contact this office.

Sincerely,

*Carolyn Decker*

Carolyn Decker, AIS, AIC
Senior Claims Representative

Jones, Skelton & Hochuli
2901 N Central Ave
Ste 800
Phoenix, AZ 85012
Attn: Mike Ludwig

EXHIBIT B



GRAF BARRETT & MATURA

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

August 4, 2011

Sun Meadow Homes, Inc.
P.O. Box 2683
Lake Havasu, AZ 86405

Attention:   Ralph Roberson

Re:       *Groth v. Sun Meadow Homes*
          Insured:          Sun Meadow Homes, Inc.
          Policy No:        96425-45522655
          Policy Period:    6/22/95 – 6/22/06
          Policy No:        07225-45410843
          Policy Period:    10/5/07 – 10/5/08
          Claim No:         45-4732-07
          Our File No:      3001-7

Dear Mr. Roberston:

As you know, this firm represents Auto-Owners Insurance Company as its coverage counsel in the above-referenced matter. Auto-Owners has been providing you with a defense, under a reservation of rights. You were previously provided with reservation of rights letters dated 12/18/07 and 8/26/08. The contents of those letters are incorporated herein.

The purpose of this letter is to advise you of Auto-Owners' current position as it pertains to coverage for the specific claims asserted in this lawsuit. It is Auto-Owners' position that certain claims encompassed in this lawsuit are outside the scope of the insuring agreement of the policy or excluded by other terms and provisions in the policy. Auto-Owners further recognizes, however, that some of the claims may be covered, in which case Auto-Owners will indemnify you for those covered claims. Auto-Owners has determined that it will continue to provide you with a defense under a reservation of rights for certain claims as asserted herein, but withdraws its reservation of rights as to other claims.

Please accept this letter as a supplement to all previous reservation of rights letters and a clarification of Auto-Owners' current coverage position.

Graf Barrett & Matura, P.C.
1450 North Central Avenue, Suite 500 · Phoenix, Arizona 85004
602-753-5700 · tel 602-753-3716 · www.gbmazlaw.com

Ralph Robinson
August 4, 2011
Page 2

## FACTUAL BACKGROUND

As you know, this matter arises out of the construction of a home built by Sun Meadow Homes in Lake Havasu City, Arizona. A certificate of occupancy was issued for the home on 4/12/00. Sun Meadow Homes conveyed title to the initial purchaser on 2/20/01. The plaintiff, Patricia Groth, bought the home on or about 2/10/03.

Plaintiff submitted a notice of claim to Sun Meadow Homes on 12/20/06. In that notice, she claimed she first noticed damage to the kitchen floor tiles in the spring of 2005. Plaintiff then filed a lawsuit against Sun Meadow Homes on 11/15/07. Plaintiff alleged that in July 2006, she learned of a "significant problem" with the concrete slab foundation of the home. She claimed improper compaction and improper drainage. She further claimed cracking, insect intrusion, and separation of the kitchen tiles, driveway and garage slabs, walls, ceilings, doors and windows throughout the home.

Plaintiff produced a report from Foundation Stabilization, Inc. dated 9/17/09. That report identified the following construction defects alleged by plaintiff in this lawsuit: presence of low density (loose) subgrade fill soils in the top 30 inches of the subgrade beneath the subject residence; cracking of subject residence concrete floor slabs and the floors; cracking of the drywall in the residence; and compressive strength of the concrete floor slab is insufficient. The report recommended the installation of micropiles or hammer driven pin piles to support the exterior and interior load bearing footings; the replacement of the concrete slab due to extensive cracking, no reinforcement in the slab and inadequate compressive strength; and other related interior repairs. The report identifies the following repair costs:

| | |
|---|---|
| Remove and replace concrete floor slab and sub grade soils | 50,000 |
| Replace and replumb plumbing | 15,000 |
| Remove and reinstall cabinets | 2,500 |
| Replace carpet and floor tile | 6,400 |
| Repair cracked drywall | 1,100 |
| Paint inside of house | 2,300 |
| Install approx. 45 piles to a depth of 15 feet | 39,000 |
| Provide designs and specs, consulting and inspection | 22,000 |

Plaintiff has claimed the following damages:

| | |
|---|---|
| Cost of Repair: | 198,360.00 |
| Contract Mgmt Fee 10% | 19,836.00 |
| Attorney Fees/costs: | 36,970.92 |
| Total: | 255,100.92 |

## INSURANCE POLICY

Auto-Owners Insurance Company issued policy number 95-625-4552263 to Sunmeadow Homes, Inc., effective from 6/22/95 – 6/22/06. This policy provided commercial general liability coverage in the amount of $1,000,000 per occurrence, with a $1,000,000 completed operations aggregate limit (until 6/22/03) and a $1,000,000 general aggregate limit. Coverage was provided pursuant to form CG 00 01 (11/88) which includes the following relevant provisions:

Ralph Robertson
August 4, 2011
Page 3

# SECTION I - COVERAGES

## COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

   c. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory," and

      (2) The "bodily injury" or "property damage" occurs during the policy period

2. Exclusions

   This insurance does not apply to:

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages.

      (1) Assumed in a contract or agreement that is an "insured contract."  However, if the insurance under this policy does not apply to liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract."

   (2) That the insured would have in the absence of the contract or agreement.[1]

                                      ***

   j. "Property damage" to:

   _____
   [1] This exclusion was added as a result of the "Contractual Coverage Amendatory Endorsement," Form 55664 (1/88)

Ralph Robertson
August 4, 2011
Page 4

(1)  Property you own, rent or occupy;

***

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

***

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k.   "Property damage" to "your product" arising out of it or any part of it.

l.   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; and

(3)  "Impaired property",

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a

Ralph Robertson
August 4, 2011
Page 5

known or suggested defect, deficiency, inadequacy or dangerous
condition in it.

This exclusion does not apply to the loss of use or other property arising out of
sudden and accidental physical injury to "your product" or "your work" after it has
been put to its intended use.

\*\*\*

## SECTION IV -- COMMERCIAL GENERAL LIABILITY CONDITIONS

\*\*\*

4.    Other Insurance.

If other valid and collectible insurance is available to the insured for a loss
we cover under Coverage A or B of this Coverage Part, our obligations are
limited as follows:

a.    Primary Insurance

This insurance is primary except when b. below applies.   If this
insurance is primary, our obligations are not affected unless any of
the other insurance is also primary.   Then, we will share with all
that other insurance by the method described in c. below.

\*\*\*

c.    Method of Sharing

If all of the other insurance permits contribution by equal shares,
we will follow this method also.  Under this approach each insurer
contributes equal amounts until it has paid its applicable limit of
insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal
shares, we will contribute by limits.   Under this method, each
insurer's share is based on the ratio of its applicable limit of
insurance to the total applicable limits of insurance of all insurers.

\*\*\*

## SECTION V -- DEFINITIONS

\*\*\*

5.    "Impaired property" means tangible property, other than "your product"
or "your work" that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or
thought to be defective, deficient, inadequate or dangerous; or

b     You have failed to fulfill the terms of a contract or agreement;

Ralph Robertson
August 4, 2011
Page 6

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product"
    or "your work"; or

b.  Your fulfilling the terms of the contract or agreement.

6.  "Insured Contract" means:

                                                    ***

f.  That part of any other contract or agreement pertaining to your
    business . . under which you assume the tort liability of another
    party to pay for "bodily injury" or "property damage" to a third
    person or organization. Tort liability means a liability that would
    be imposed by law in the absence of any contract or agreement.

                                                    ***

    (1)  Products that are still in your physical possession; or

    (2)  Work that has not yet been completed or abandoned.

b.  "Your work" will be deemed completed at the earliest of the
    following times:

    (1)  When all of the work called for in your contract has been
         completed.

    (2)  When all of the work to be done at the site has been completed
         if your contract calls for work at more than one site.

    (3)  When that part of the work done at a job site has been put to
         its intended use by any person or organization other than
         another contractor or subcontractor working on the same
         project.

    Work that may need service, maintenance, correction, repair or
    replacement, but which is otherwise complete, will be treated as
    completed.

9.  "Occurrence" means an accident, including continuous or repeated
    exposure to substantially the same general harmful conditions.

                                                    ***

11. a.  "Products-completed operations hazard" includes all "bodily
        injury" and "property damage" occurring away from premises you
        own or rent and arising out of "your product" or "your work"
        except:

Ralph Robertson
August 4, 2011
Page 7

***

12. "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

***

13. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged.

14. "Your product" means:

    a.    any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You. . .;

***

        "Your product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.    The providing of or failure to provide warnings or instructions.

15. "Your work" means:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

        "Your work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.    The providing of or failure to provide warnings or instructions.

Ralph Robertson
August 4, 2011
Page 8

Effective 6/22/01, until the expiration of the policy on 6/22/06, the policy contained the following endorsements:

EXCLUSION - COMPLETED OPERATIONS -
PROPERTY DAMAGE TO YOUR WORK[1]

This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Under Section I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, exclusion 1. is deleted and replaced by the following:

2. Exclusions

1. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

All other policy terms and conditions apply.

* * *

EXCLUSION - CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS[2]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following exclusion is added to COVERAGES A and B (Section I):

This insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications by an architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury," or "property damage" due to construction or demolition work done by you, your employees or your subcontractors.

Effective 6/22/03, until the expiration of the policy on 6/22/06, the policy also contained the following endorsements:

Ralph Robertson
August 4, 2011
Page 9 '

## FUNGI OR BACTERIA EXCLUSIONS[4]

\* \* \*

A.   The following exclusions are added to paragraph 2. Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1):

    1.   "Bodily injury" or "property damage" arising out of, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria, whether airborne or not, on or within a building or structure, including its contents.   This exclusion applies whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

\* \* \*

C.   The following definition is added to DEFINITIONS (Section V):

"Fungi" means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.

\* \* \*

## AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE[5]

\* \* \*

Paragraph 1. Insuring Agreement of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1) is deleted and replaced by the following:

1.   Insuring Agreement

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. \* \* \*

\* \* \*

    b.   This insurance applies to "bodily injury" and "property damage" only if:

---

[4]   Form 55238 (4/03).
[5]   Form 55239 (1/03).

Ralph Robertson
August 4, 2011
Page 10

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of WHO IS AN INSURED (Section II) and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew or should have known that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized employee knew or should have know, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Finally, effective 6/22/03 – 6/22/06, the policy contained the following endorsement:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION — PRODUCTS - COMPLETED OPERATIONS HAZARD[5]

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."

Auto-Owners then issued policy number 072325-45410843 to Sun Meadow Homes, Inc., effective 10/5/07 – 10/5/08. That policy provides general liability coverage in the amount of $1,000,000 each occurrence, with a $2,000,000 products/completed operations aggregate limit and a $2,000,000 aggregate limit. Coverage is provided pursuant to Form 55300 (07/05), which states as follows:

SECTION I – COVERAGES

COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   Insuring Agreement

---

6   Form CG 2104 (11/85)

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

   (1)  The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

   (2)  Our right and duty to defend end and when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

   (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)  The "bodily injury" or "property damage" occurs during the policy period; and

   (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by your to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1)  Reports all or any part of the "bodily injury" or "property damage" to us or any other insurer;

   (2)  Receives a written or verbal demand or claim for damages

Ralph Robertson
August 4, 2011
Page 12

because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or
"property damage" has occurred or has begun to occur.

d.    Damages because of "bodily injury" include damages claimed by
any person or organization for care, loss of services or death
resulting at any time from the "bodily injury."

The policy also contains the following endorsement:

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

### Schedule

Premises:    541 Hackberry
Lake Havasu, AZ 86403

* * *

This insurance applies only to "bodily injury," "property damage," "personal
injury," "advertising injury," and medical expenses arising out of:

1.    The ownership, maintenance or use of the premises shown in the Schedule
and operations necessary or incidental to those premises; or

2.    The project shown in the Schedule.

## WITHDRAWAL OF RESERVATION OF RIGHTS
## AS TO CERTAIN CLAIMS

Based upon the information that Auto-Owners has obtained during the course of its
investigation in this matter, and subject to all of the other applicable terms, provisions and
exclusions contained in the policy, it appears that coverage may be available to the extent that
Sun Meadow Homes is found liable for the following damages/repairs, as have been claimed
by plaintiff in this lawsuit and set forth in the above-noted reports:

| | |
|---|---|
| Remove and reinstall cabinets | 2,500 |
| Replace carpet and floor tile | 6,400 |
| Repair cracked drywall | 1,200 |
| Paint inside of house | 2,200 |

Any such damage, as listed above, that occurred during the period of 2/20/01 -
6/22/01.

Please note that based on the information provided to us, as set forth in detail above, it
appears that plaintiff is seeking a number of damages to repair or replace allegedly faulty
concrete and grading work. Plaintiff is also claiming ongoing damage to the residence as a

Ralph Robertson
August 4, 2011
Page 13

result of this allegedly faulty work. To the extent that the faulty work itself and/or the faulty product itself has resulted in damage to other property, Auto-Owners does not reserve its rights as to those items of resultant damage, as itemized *above*, and will agree to indemnify Sun Meadow Homes should it be found liable for this resultant damage and the associated repairs for such damage. This withdrawal of the reservation of rights, however, applies only to such damage, as set forth above, which occurred after 2/23/01, when Sun Meadow Homes transferred ownership of the property and before 6/22/01, when Form 55209 was added to the policy excluding such damages. *Auto-Owners will agree to indemnify Sun Meadow Homes for the above-referenced damage as it may be found liable that occurred during the period of 2/20/01 – 6/20/01.*

<u>CONTINUING RESERVATION OF RIGHTS</u>

Based upon the information Auto-Owners has been provided to date, it further appears that certain policy terms, provisions and exclusions continue to apply to limit or preclude coverage for some of the damages at issue in this case. Please note the following:

The insured has the burden of establishing damages that fall within the insuring agreement of the policy. The subject policy covers only "property damage" caused by an "occurrence." The mere failure of an insured to properly perform its work is not an "occurrence." To the extent there was no occurrence, there is no coverage. Costs for simply replacing or repairing defective work are not covered. Moreover, as of 6/22/01, the policy contained Form 55209, which is set forth above. As a result of this endorsement, the policy does not provide coverage to anything that is considered your "work." Your "work" in this case is the construction of the plaintiffs' home, which includes all work performed by you or on your behalf. After 6/22/01, no damage to the home itself is covered property damage

Further, to the extent that property damage did not occur during the Auto-Owners policy period, there is no coverage under that particular policy. The policy provides coverage only for damages that occurred during the relevant policy period. As of 6/22/03, the policy does not provide any coverage to the extent Sun Meadow was aware of an "occurrence" or of the onset of "property damage" prior to each individual policy period. Sun Meadow was aware of this claim as of December 2006.

Exclusion a. precludes coverage for any property damage that was intended or expected by the insured.

Exclusion b. precludes coverage for liability assumed by a contract to the extent the contract is not an "insured contract."

Exclusion j(1) precludes coverage for any "property damage" to property damage you own, rent or occupy. As a result, there is no coverage for any damage that occurred while Sun Meadow still owned the subject property.

Exclusion j(5) precludes coverage for property damage to that particular part of real property upon which the insured is performing operations, to the extent that any of this alleged damage occurred during the course of ongoing operations.

Exclusion j(6) precludes coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it."

Ralph Robertson
August 4, 2011
Page 14

Exclusion k. precludes coverage for "property damage" arising out of "your product."

Exclusion l. excludes coverage for "property damage" arising out of "your work," but does not apply if the work was performed by subcontractors.

Exclusion m. precludes coverage for "property damage" to property that has been "impaired" but not physically injured, if the damage arose out of a defect with regard to your work.

Exclusion n. precludes coverage for any damages claimed for "any loss, cost or expense incurred by you or others" pertaining to the "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal" of "your product" or "your work."

Form 55258 precludes coverage for any claims involving damage as a result of mold. Form CG 2294 precludes coverage for any "property damage" which arises out of "inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager."

As of 6/22/06, Form CG 2104 precludes coverage for all damage falling within the completed operations hazard.

Finally, please note that the second policy, in effect 10/5/07 – 10/5/08, does not provide coverage for this claim. That policy states there is coverage only to the extent the insured was not aware damage had occurred or the insured had not already received notice of a claim. In this case, plaintiff submitted her notice of claim in December 2006, before the inception of the second policy. Therefore, it does not apply here.

Based upon the information as set forth above, it appears that many of the claims asserted by plaintiff are claims arising solely out of allegedly faulty work and the costs to repair or replace that allegedly faulty work. The costs of repairing and/or replacing that allegedly faulty work or any other related costs incurred solely as a result of repairing or replacing that faulty work is not covered by the policy. Further, the above provisions further preclude coverage for all or some of these damages. Accordingly, Auto-Owners continues to reserve its rights relating to such damage, other than as identified above for which Auto-Owners has expressly withdrawn its reservation of rights. That includes the right to deny coverage for all or part of any judgment or settlement, the right to withdraw from the defense, the right to seek reimbursement of defense costs, and the right to commence a declaratory judgment action.

## CONCLUSION

Auto-Owners will continue to provide Sun Meadow Homes with a defense in this matter, pursuant to the terms and conditions of its policy and subject to a reservation of those rights as stated herein. Auto-Owners' position is based on the facts as alleged in the pleadings and the other factual information that has been provided to date. Auto-Owners reserves the right to reevaluate its coverage position in the event new allegations or claims are asserted in this matter, and reserves the right to make a separate coverage determination with respect to

Ralph Robertson
August 4, 2011
Page 15

any new information which may be provided to it.  Please advise us immediately if you believe we have misstated or omitted any material facts.

Under the terms of the policy, Auto-Owners has the right and duty to defend Sun Meadow Homes in this matter.  Sun Meadow, in turn, must cooperate with Auto-Owners in the defense and, except at its own cost, is not authorized to admit liability or settle any part of the case for which Auto-Owners has accepted coverage without Auto-Owners' consent.  Any unauthorized admission of liability or settlement of a claim for which Auto-Owners has accepted coverage will violate the conditions of the policy, pursuant to *Morris v USAA* and *Munzer v. Feola*.  Any such unauthorized admission of liability or settlement will be a voluntary payment made at the insured's own expense.

Should Sun Meadow Homes elect to enter into an agreement with plaintiff, Auto-Owners further reserves the right, after reasonable notice and the opportunity to review the terms and conditions of said agreement, to elect to change its coverage position, including the right to withdraw its continuing reservation of rights.

Auto-Owners continues to defend Sun Meadow Homes and remains willing to examine any potential settlement possibilities.

If you have any questions or would like to discuss this matter further, please feel free to contact this office.

Sincerely,

Jennifer M. Bligh

Cc:   Gary Linder
      Jones, Skelton Hochuli
      (via electronic mail)





**COPY**

AUG - 8 2012

MICHAEL K.JEANES, CLERK
S.DONAHOE
DEPUTY CLERK

1  Michael J. Raymond (009272)
2  **Raymond, Greer & Sassaman, P.C.**
   3636 North Central Avenue, Suite 1070
3  Phoenix, Arizona 85012-1940
   (602) 274-0500
4  mjr@rgslaw.net

5  Attorneys for Plaintiff

6                SUPERIOR COURT OF ARIZONA

7                    MARICOPA COUNTY

8  PATRICIA A. GROTH, an individual,        No. **CV2012-012045**
9
                        Plaintiff,          **CERTIFICATE REGARDING**
10                                          **COMPULSORY**
   vs.                                      **ARBITRATION**
11
12 OWNERS INSURANCE COMPANY, a
   Michigan corporation,
13
                        Defendant.
14

15        Pursuant to Rule 72 of the Arizona Rules of Civil Procedure and Rule 3.10,

16 Local Rule of Practice for Maricopa County Superior Court, undersigned counsel

17 certifies that he knows the dollar limits and any other limitations set forth by

18 Local Rules of Practice for the applicable Superior Court and, further certifies

19 that this case is not subject to compulsory arbitration as provided by Rules 72

20 through 76 of the Arizona Rules of Civil Procedure.

21        DATED this _8th_ day of August 2012.

22                          RAYMOND, GREER & SASSAMAN, P.C.

23
24                          By _____
                                Michael J. Raymond
25                              3636 North Central Avenue
                                Suite 1070
26                              Phoenix, Arizona 85012
                                Attorneys for Plaintiff