**GRAIF BARRETT & MATURA, P.C.**
Kevin C. Barrett, Bar #020104
Jennifer M. Bligh, Bar #013260
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Tel: (602) 792-5700
Fax: (602) 792-5710
Email Addresses: kbarrett@gbmlawpc.com
　　　　　　　　 jbligh@gbmlawpc.com

*Attorneys for Owners Insurance Company*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia A. Groth, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Owners Insurance Company, a Michigan corporation,<br><br>　　　　　　　　Defendant. | NO. 2:12-cv-01846-PHX-DGC<br><br>**DEFENDANT OWNERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(The Honorable David G. Campbell)**<br><br>**(Oral Argument Requested)** |

Pursuant to Rule 56, Fed. Rules Civ. Proc., Defendant Owners Insurance Company ("Owners") moves this Court for summary judgment on Plaintiff's claim of breach of contract. The sole count of Plaintiff's Complaint alleges that Owners is obligated to indemnify Plaintiff and satisfy the judgment entered in her favor and against Owners' insured in an underlying lawsuit pursuant to a Morris Agreement. In order to recover on this claim, Plaintiff must prove there is coverage for the claims included in the judgment and a duty to indemnify under the Owners' policy. As set forth below, there is no coverage for the claims and damages included in the judgment, and, as a result, there can be no recovery against Owners in this case.

This Motion is supported by the following Memorandum of Points and Authorities, the Separate Statement of Facts filed contemporaneously herewith ("SOF"),

the Stipulated Separate Statement of Facts Regarding Policy Provisions ("SSOF"), and the entire record in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.  FACTUAL BACKGROUND

#### 1.  The Underlying Lawsuit

This insurance dispute arises out of certain claims asserted in a lawsuit entitled *Groth v. Sunmeadow Homes*, Mohave County Superior Court No. CV2007-2059 ("the underlying lawsuit"). In the underlying lawsuit, Groth alleged that her home, located at 3318 Candlewood Drive in Lake Havasu City, Arizona, was defectively constructed by Sunmeadow Homes ("Sunmeadow"). (SOF ¶¶ 1 - 3). Sunmeadow was insured by Owners.

The City of Lake Havasu issued the Certificate of Occupancy for the home on April 12, 2000. (SOF ¶ 4). On March 21, 2001, Sunmeadow sold the home to Selyna Sue Ross. (SOF ¶ 5). Then, on February 10, 2003, Ms. Ross sold the home to Groth. (Id.)

On December 20, 2006, counsel for Groth sent a letter to Sunmeadow Homes entitled Notice and Opportunity to Repair Pursuant to A.R.S. § 12-1363 ("Notice of Claim Letter").[1] (SOF ¶ 6). The Notice of Claim letter asserts that Groth first noticed damage to her kitchen tile floors in the spring of 2005. (SOF ¶ 7). Groth alleged that the damage was due to cracking or separation of the underlying concrete slab foundation. (SOF ¶ 8). She also alleged "noticeable and serious cracks in the drywall," water stains in the kitchen ceiling, separation in the tile grouting between the kitchen counter and backsplash, and cracks in the patio slab, garage floor and driveway. (SOF ¶ 9). She asserted possible poor soil compaction, compromised soil conditions and improper drainage. (SOF ¶ 10).

On November 15, 2007, Groth filed a Complaint against Sunmeadow in Mohave County Superior Court. (SOF ¶ 11). In that Complaint, she alleged damage to the

---

[1] This letter was also sent as to Lake Havasu City as a Notice of Claim Against Public Entity. The asserted claim against Lake Havasu City was later dropped and is not relevant to these proceedings.

concrete slab, causing "cracking, distressed, misaligned or separating kitchen tiles, driveway and garage slabs, walls ceilings, doors and windows at areas throughout the home." (SOF ¶ 12). Groth alleged that Sunmeadow was responsible for the failure to properly compact the soil, the failure to properly reinforce the concrete slab, the failure to properly test the soil and the failure to provide adequate drainage. Groth sued Sunmeadow for breach of warranty. (SOF ¶ 13).

In the underlying lawsuit, Groth alleged, through expert testimony, that the soil was improperly compacted and that the concrete slab was improperly constructed. (SOF ¶ 14). All of this work was performed by Sunmeadow through its subcontractors. (SOF ¶ 23) Groth submitted a report in the underlying lawsuit alleging repair costs of $218,130 to fix the various repairs. Those costs were as follows:

| | |
|---|---|
| Remove and replace concrete floor slab and subgrade soils | 50,000 |
| Replace and replumb plumbing | 15,000 |
| Remove and reinstall cabinets | 2,500 |
| Replace carpet and floor tile | 6,400 |
| Repair cracked drywall | 1,200 |
| Paint inside of house | 2,200 |
| Install approx. 45 piles to a depth of 15 feet | 99,000 |
| Provide designs and specs; consulting and inspection | 22,000 |
| 10% Contract Management Fee | 19,830 |

(SOF ¶ 15).

In the underlying lawsuit, Groth testified that she did not notice any of these alleged defects until at least late 2004 or 2005. (SOF ¶ 16). Her expert also testified he did not have any real explanation for why this alleged damage may not have started until four years after the house was built. (SOF ¶ 17). In this lawsuit, Groth has stated that she does not know when the alleged damage occurred. (SOF ¶ 18).

**2.  The Stipulated Judgment and Settlement Agreement**

When the Complaint was filed in the underlying lawsuit, Owners agreed to defend its insured, Sunmeadow, pursuant to a reservation of rights. Owners issued a reservation of rights letter on December 18, 2007. (SOF ¶ 19). A supplemental reservation of rights letter was sent to Sunmeadow on August 26, 2008. (SOF ¶ 20). Another supplemental reservation of rights letter was sent to the insured on August 4, 2011. (SOF ¶ 21). In the

August 4, 2011 letter (hereinafter referred to as "Munzer letter"), Owners withdrew its reservation of rights with regard to the following damages claimed by Groth:

| | |
|---|---:|
| Remove and reinstall cabinets | 2,500 |
| Replace carpet and floor tile | 6,400 |
| Repair cracked drywall | 1,200 |
| Paint inside of house | 2,200 |

Owners continued to reserve its rights with respect to all other damages claimed by Groth. (SOF ¶ 21).

Subsequently, Groth and Sunmeadow entered into a "Settlement Agreement, Covenant not to Execute and Assignment" (hereinafter referred to as "Morris Agreement"). (SOF ¶ 22). In that agreement, the parties stipulated that the work of Sunmeadow and its subcontractors, including the subcontractor responsible for the grading and the subcontractor responsible for the installation of the concrete foundation, fell below the standard of care and caused damage to the home. (SOF ¶ 23). The parties stipulated that these defects caused "continuous and progressive property damage to the Home from and after April 12, 2000 through present." (SOF ¶ 24). The parties stipulated to a partial judgment against Sunmeadow in the amount of $234,210.92. This judgment is based on and includes the following alleged damages:

| | |
|---|---:|
| Remove and replace concrete floor slab and subgrade soils | 50,000.00 |
| Replace and replumb plumbing | 15,000.00 |
| Install approx. 45 piles to a depth of 15 feet | 99,000.00 |
| Provide designs and specs; consulting and inspection | 22,000.00 |
| 10% Contract Management Fee | 18,600.00 |
| Attorney Fees and Costs | 37,110.92 |

(SOF ¶ 25). The judgment also took into account a credit of $7,500 for payments obtained by third parties and paid to Groth. (Id.)

As part of the Morris Agreement, Groth was assigned any claims and/or rights against Owners and under the Owners' policies with regard to the claims still subject to the reservation of rights and set forth in the Agreement. (SOF ¶ 26). On April 13, 2012, the Stipulated Partial Judgment was entered against Sunmeadow in the underlying lawsuit in

4

the amount of 234,210.92.[2] (SOF ¶ 27). Groth now seeks to recover from Owners the amount set forth in the Stipulated Partial Judgment. (SOF ¶ 28).

### 3. The Owners Policies

Owners issued policy number 954625-45522653 to Sunmeadow Homes, Inc., effective from June 22, 1995 to June 22, 2006 ("the first policy"). (SSOF ¶ 1). For each policy period, it provided commercial general liability coverage in the amount of $1,000,000 per occurrence, with a $1,000,000 completed operations aggregate limit (until June 22, 2005), and a $1,000,000 general aggregate limit. (Id.) From June 25, 2005 to June 25, 2006, the limits were $1,000,000 per occurrence with a $1 million general aggregate limit. (For that time period, there was no competed operations coverage.) (Id.)

The parties have stipulated that, based on the dates of the construction of the Groth home, the first relevant policy period is June 22, 2000 to June 22, 2001. (SSOF ¶ 2). Under that first policy, coverage was provided pursuant to Form CG 0001 (11/ 88). The pertinent language of the insuring agreement is as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
>
> \*\*\*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>   (2) The "bodily injury" or "property damage" occurs during the policy period.

(SSOF ¶ 3).

The first policy includes the following exclusions:
This insurance does not apply to:
\*\*\*

---
[2] The remaining claims, for which Owners withdrew its reservation of rights, were subsequently settled and are not part of this lawsuit.

5

> j. "Property damage" to:
>    (1) Property you own, rent, or occupy;
>    \*\*\*
> l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".
>
>    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(SSOF ¶ 4).

The first policy also includes the following endorsement as of June 22, 2001:

> 2. Exclusions
>    1. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(SSOF ¶ 6). "Your work" includes all "work or operations performed by you or on your behalf." (SSOF ¶5). This endorsement effectively modified and eliminated the "subcontractor exception" in exclusion l.

Owners then issued policy number 07235-45410843 to Sunmeadow Homes, Inc., effective October 5, 2007 to October 5, 2008 ("the second policy").[3] (SSOF ¶ 9). The second policy provides general liability coverage in the amount of $1,000,000 each occurrence, with a $2,000,000 products/completed operations aggregate limit and a $2,000,000 general aggregate limit. (Id.) Under the second policy, coverage was provided pursuant to Form 55300 (07/05), which includes the following language in the insuring agreement:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
>    \*\*\*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>    (1) The "bodily injury" or "property damage" is caused by an

---

[3] This second policy is actually issued by Auto-Owners Insurance Company.

6

|  |  |  |
|---|---|---|
|  |  | "occurrence" that takes place in the "coverage territory"; |
|  | (2) | The "bodily injury" or "property damage" occurs during the policy period; and |
|  | (3) | Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by your to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. |
| c. |  | "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim: |
|  | (1) | Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer; |
|  | (2) | Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or |
|  | (3) | Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. |

(SSOF ¶¶ 10 – 11).

Finally, Owners issued policy number 084625-45017106 to Sunmeadow Homes, Inc., effective October 5, 2008 to October 5, 2013 ("the third policy").[4] (SSOF ¶ 12). The third policy provides general liability coverage in the amount of $1,000,000 each occurrence, with a $2,000,000 product/completed operations aggregate limit and a $2,000,000 general aggregate limit. (Id.) Under the third policy, coverage was also provided pursuant to Form 55300 (07/05). (SSOF ¶ 13).

**B.   LEGAL ARGUMENT**

**1.   Standard for Summary Judgment.**

Summary judgment should be rendered if "there is no genuine issue as to any

---

[4] This policy was also issued by Auto-Owners Insurance Company.

7

material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). A motion for summary judgment on insurance coverage is especially appropriate because "[t]he interpretation of an insurance contract is a question of law for the court to decide." *See EaglePicher Management Co. v. Zurich American Ins. Co*., 640 F. Supp. 2d 1109, 1114 (D. Ariz. 2009) (*citing Thomas v. Liberty Mut. Ins. Co.,* 173 Ariz. 322, 842 P.2d 1335, 1337 (App.1992)); *McHugh v. United Service Auto. Ass'n,* 164 F.3d 451 (9th Cir. 1999). If a motion for summary judgment is properly supported, then the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided [in FRCP 56]—set out specific facts showing a genuine issue for trial." Fed. Rule Civ. Proc. 56(e)(1). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.* Here, there is no genuine issue of material fact, and Owners is entitled to judgment as a matter of law.

### 2. Interpretation of Insurance Policy.

Interpretation of an insurance contract is a question of law. *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46, 13 P.2d 785, 788 (App. 2000). Courts interpret insurance contracts pursuant to their plain meaning, and courts will not create ambiguity to expand coverage. *Sec. Ins. Co. v. Andersen*, 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988). In this case, the policy provisions are clear, and the Court must interpret them and enforce them according to their plain meaning.

### 3. No Coverage under the Second and Third Policies.

As set forth above, there were three separate policies issued to Sunmeadow Homes by Owners. However, the second and third Owners policies expressly state that there is coverage only to the extent that prior to the policy period, the insured had no knowledge the "bodily injury" or "property damage" had begun to occur, "in whole or in part." (SSOF ¶¶11, 13). If any insured knew that any such damage had begun to occur prior to the policy period, any continuation, change or resumption of that damage during the policy period will also be deemed known before the policy period. Such damage is

deemed to be known whenever an insured receives a written or verbal demand or claim, reports the claim to the insurer, or becomes aware "by any other means" that the damage has begun to occur. (SSOF ¶ 11).

In this case, Groth submitted a formal Notice of Claim letter to Sunmeadow in December 2006. (SOF ¶ 6). This letter was served on Sunmeadow through its statutory agent and informed Sunmeadow of the various claims with regard to improper compaction of the soil and improper drainage. It also informed Sunmeadow of the damages that allegedly had resulted from these problems, including cracking and separation of drywall, flooring, patios, garage slab and grout. (SOF ¶ 8 – 10). These are the same claims and the same damages that were later asserted and litigated in the underlying lawsuit. (SOF ¶¶ 12 – 13). The second policy went into effect in October 2007. Since this claim, and this alleged damage, had already been reported to Sunmeadow approximately nine months prior to that, the insured already had knowledge of such claims and such damage. The second policy therefore does not apply.

For the same reasons, the third policy does not apply. In fact, the Complaint itself was filed in November 2007. (SOF ¶ 11). The third policy did not go into effect until October 2008. (SSOF ¶12). Therefore, the insured was clearly aware of the claim and the alleged damages prior to the inception of the third policy.

As a result, the second and third policies do not provide any coverage for these claims, and Owners is entitled to summary judgment that there is no coverage for the stipulated judgment under either of those policies and that Owners has no duty to indemnify Groth under the second and/or third policies.

4. **No Coverage under the First Policy**.

The first policy, as set forth above, was in effect through June 22, 2006. Although this policy actually incepted in 1995, there is no dispute that the first policy period that potentially applies here (based on the dates of construction of the home) is the 2000 policy period. Therefore, the relevant dates of potential coverage are June 22, 2000 through June 22, 2006. (SOF ¶¶ 1- 2).

        a.    <u>Any damage that may have occurred before February 20, 2001 is excluded.</u>

This home was completed on or about April 12, 2000. (SOF ¶ 4). However, Sunmeadow retained title to the home until February 20, 2001, when it was sold to its first purchaser. (SOF ¶ 5). The first policy contains an exclusion for "property damage" to property you (the insured) own, rent or occupy. (SSOF ¶4). Pursuant to exclusion (j)(1), there is no coverage for any damage that occurs while an insured owns, rents or occupies the property. (Id.) This exclusion is essentially designed to exclude coverage for damage to the insured's own property, something that is typically covered by first-party insurance. Therefore, there is no coverage if the loss occurred to the named insured's property. *See, e.g.*, *Historical Home Designs, Inc. v. Cent. Mut. Ins. Co.*, 673 S.E.2d 315 (Ga. App. 2009)(damage to defective roof excluded as it occurred while home was being constructed and insured still owned it); *Erie Ins. Exch. v. Colony Dev. Corp.*, 2003 Ohio 7232 (Ohio App. 2003)(policy excluded coverage for damage to walls that occurred during the course of construction and before title was transferred from insured/developer to individual unit owners); *Genesis Ins. Co. v. BRE Properties,* 916 F.Supp.2d 1058 (N.D. Cal. 2013)(exclusion (j)(1) applies to property that an insured owns when the damage occurs).

As a result of this exclusion, there can be no coverage until after February 20, 2001, when Sunmeadow (the insured) no longer owned the property.

        b.    <u>Any damage that may have occurred after June 22, 2001 is excluded</u>.

As of June 22, 2001, Form 55209 was added to the policy. That endorsement modifies exclusion (l) of the policy to eliminate the subcontractor exception. Under exclusion (l), damage to the insured's own "work" is excluded. However, exclusion (l) contains an exception when this "work" was done by a subcontractor. Form 55209 removes this exception. In other words, as a result of Form 55209, there is no coverage for any damage that is damage to the insured's own "work." (SSOF ¶ 6). The insured's "work" includes any work done by the insured itself or on the insured's behalf by subcontractors. (SSOF ¶ 5).

In this case, the insured's "work" was the construction of the house. The insured was responsible for the construction of the entire house, and the entire house was built by the insured through its subcontractors. *See, e.g., Durbrow v. Mike Check Builders, Inc.* 442 F.Supp.2d 676 (E.D. Wis. 2006)(noting that the entire house is incorporated into the definition of "your work" when insured has contracted to build a house) By the plain language of this endorsement, any damage to the house is not covered.

The only claims asserted in this case are claims for damage to the house built by Sunmeadow and its subcontractors. Groth has not claimed and did not claim damage to anything else. Since all damage asserted in this case is damage to the house itself, and therefore to the insured's own work, there is no covered damage after June 22, 2001, when this endorsement was added to the first policy.

        c.      <u>There is coverage only for an "occurrence" resulting in "property damage".</u>

The policy itself provides coverage only to the extent there is an "occurrence" which has resulted in "property damage" and that "property damage" occurs during the policy period. (SSOF ¶ 3). Based on the "owned property" exclusion and Form 55209 (discussed above), the only potential for coverage is for such "property damage" that may have occurred between February 20, 2001, when Sunmeadow sold the home, and June 22, 2001, when Form 55209 went into effect. As a result, there is coverage only to the extent there was an "occurrence" that resulted in "property damage" during that time frame.

Arizona law is clear that "faulty workmanship, standing alone, cannot constitute an occurrence as defined in [a CGL] policy, nor would the cost of repairing the defect constitute property damages." *USF & G v. Advance Roofing & Supply Co.,* 163 Ariz. 476, 482, 788 P.2d 1227, 1233 (App. 1989). In this case, Groth has alleged that the soil was compacted improperly and sought damages to correct that faulty compaction. Groth also alleged that the concrete foundation was installed incorrectly and sought to recover the cost of repairing and replacing that foundation. For example, the judgment includes a cost of $50,000 for removing and replacing the concrete floor slab as well as the subgrade

11

soils. It also includes the cost of installing piles to stabilize the soil ($99,000) and the cost of the design, consulting and inspection fees for such repairs ($22,000). All of those repairs involve the correction of the insured's faulty work. The judgment also includes the cost of replacing the plumbing ($15,000), which was necessitated as a result of the removal and replacement of the concrete slab and soil. There is no evidence the plumbing was damaged in any manner. Rather, it had to be removed in order to complete the repair of the concrete and soil. In other words, that cost also was related to the correction of the faulty work. *See Desert Mountain Prop. Ltd. v. Liberty Mut. Fire Ins. Co.,* 225 Ariz. 194, 236 P.3d 421 (App. 2010)(the cost of removing or replacing non-defective property required in order to repair the poorly compacted soil is part of the repair of the faulty work and not covered). All of these damages relate solely to the correction of an insured's faulty work and, therefore, do not constitute an "occurrence" resulting in "property damage" within the meaning of the policy.

Notably, in *Lennar Corp. v. Auto-Owners Ins. Co.,* 214 Ariz. 255, 151 P.2d 538 (App. 2007), the court recognized that there may be coverage for damage that *results from the faulty work.* For example, in *Lennar,* there were allegations that the faulty soils work led to cracks in the walls, baseboard separation and floor tile cracks and separation. Such damages were alleged here by Groth as well. However, those damages are *not* part of this case. Owners withdrew its reservation with regard to those "resultant damages" and that portion of the case was settled. Those damages were not part of the Morris Agreement or the stipulated judgment that Groth now seeks to recover. The *only* damages included in the Morris Agreement and the stipulated judgment are the damages for which Owners continued to reserve rights—i.e., the costs for repairing the faulty work. The cost of replacing the faulty concrete and correcting the faulty soils compaction, simply put, are not covered. Those damages do not fall within the insuring agreement of the policy.

        d.    <u>There is coverage only for damage that occurred during the policy period</u>.

In addition, even assuming *arguendo* that there is any "property damage" here,

such damage is not covered in any event unless it happens during a covered policy period. As discussed above, the only potentially covered policy period is the time period between February 20, 2001 and June 22, 2001. In order to recover any part of this judgment, Groth has the burden of establishing that some covered damage occurred during that four-month time frame.

It is a well-settled rule that there is no "occurrence" until a plaintiff actually sustains damage, and that "coverage is determined by the time of the damage and not the conduct on the part of the insured that gave rise to the …damage." *Lennar,* 214 Ariz. at 265, 151 P.3d at 548, *citing Outdoor World v. Continental Cas. Co.,* 122 Ariz. 292, 295, 594 P.2d 546, 549 (App. 1979). The court in *Lennar* noted that this general rule applies even when the property damage is "incremental" in nature. 214 Ariz. at 266, 151 P.3d 549. An insurer must provide coverage for ongoing property damage "*that occurs during the policy period.*" *Id.* (Emphasis added.) In *Lennar,* the court actually dealt with a duty to defend issue and noted that there was a duty to defend if there was any damage potentially occurring during a particular policy period. The court further noted, however, that "the question of how much damage, if any, was actually sustained during any given policy period" would be a question of allocation for the trier of fact. *Id.*

This is not a duty to defend case. There is no question that Owners complied with its duty to defend. The only question now is whether it has a duty to indemnify—i.e., whether it is obligated to pay any of the damages included in the stipulated judgment. In terms of those damages, Owners would only be obligated to pay to the extent specific damage can be allocated to that specific policy period, i.e., to the extent there is damage that actually "occurred" between February 20, 2001 and June 22, 2001.

    e. <u>Plaintiff has the burden to establish all elements of the insuring agreement.</u>

It is the burden of the insured to establish coverage under the policy. "Generally, the insured bears the burden to establish coverage under an insuring clause…" *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000). Only

13

1  *after* the insured has established coverage does the burden shift to the insurance carrier to
2  establish the applicability of any policy exclusion.  *Id.*  Then, the burden shifts back to the
3  insured, if applicable, to prove that his claim falls within an exception to the exclusion.
4  *Nationwide Mut. Fire Ins. Co. v. Jones*, 695 F.Supp.2d 978, 982 (D.Ariz. 2010).

Here, Groth obtained a judgment against Sunmeadow, Owners' insured. As part of that judgment, Groth was assigned whatever rights Sunmeadow, as the insured, would have had against Owners to collect under the policies.  Furthermore, Sunmeadow was only entitled to enter into such an agreement with respect to those claims and damages for which Owners had not withdrawn its reservation of rights.  *Munzer v. Feola,* 195 Ariz. 131, 985 P.2d 616 (App. 1999)(*Morris* agreement is valid only with regard to claims for which the insurer has reserved its rights).

Now that Groth has entered into this agreement and stipulated to such a judgment, she must establish coverage for the damages included in that judgment in order to collect all, or any part, of it from Owners.  In order to do so, she must prove that the required elements of the insuring agreement have been met.  She cannot do so simply by producing the Morris Agreement, which includes certain facts therein.  The parties to a *Morris* agreement cannot stipulate to facts that are essential to establishing coverage as such a stipulation "would be worthless." *United Services Ass'n v. Morris*, 154 Ariz. 113, 120, 741 P.2d 246, 253 (1987). An insured cannot use a settlement agreement as a vehicle to obtain coverage that he did not purchase. *Id.*  A *Morris* agreement does not and cannot create coverage.  The insurer is only liable if the judgment includes some liability that falls with the coverage of the insurance policy. *Colorado Cas. Ins. Co. v. Safety Control Co., Inc.*, 230 Ariz. 560, 567, 288 P.3d 764, 771 (App. 2012).  *See also Assoc. Aviation Underwriters v. Wood,* 209 Ariz. 137, 159, 98 P.3d 572, 594 (App. 2004)(to establish there is an "accident" causing damage during the policy period, party cannot rely on the *Morris* agreement or consent judgment).

Groth has not produced any facts in this litigation that meet the burden of establishing coverage under the Owners policies.  Groth has failed to prove the judgment

includes any resultant property damage as required by the insuring agreement. More importantly, Groth has not established what damage, if any, occurred during the relevant policy period. In fact, she has not established that any damage at all occurred during the relevant policy period. The only testimony or evidence submitted by Groth, in terms of when damage occurred, establishes that it occurred sometime in 2005. (SOF ¶¶ 7, 16). The experts in the underlying lawsuit did not give any opinion as to when such damage occurred or began to occur and, in fact, the only such testimony was an attempt to explain why it may have taken years after construction for such damage to occur. (SOF ¶ 17). Groth herself stated, in discovery responses, that she was "unable to identify" when the alleged damage occurred. (SOF ¶ 18).

Without such evidence, Groth has failed to meet her burden of establishing coverage under the policy. Without such evidence, Groth has not established that Owners has any duty to indemnify Groth for any of the damages set forth in the Morris Agreement and the Partial Stipulated Judgment.

C.  **CONCLUSION**

Groth obtained a judgment against Owners' insured, Sunmeadow, in the underlying lawsuit. Groth was assigned any and all rights that may exist under the Owners policy to recover this judgment. However, Groth cannot recover the stipulated judgment from Owners unless and until she proves that Owners actually has a duty to indemnify, i.e., that all or a portion of the judgment is actually covered under the policy. Owners properly reserved its rights in the underlying lawsuit to contest coverage for these claims. It is now the burden of Groth, as the assignee of the insured, to prove the claims are covered and that she is entitled to indemnity. She has not done so.

As set forth above, it is clear the second and third Owners policies do not apply here. Those policies do not apply if the insured was aware of the claim, or the damages, prior to the inception of the policy. Sunmeadow was made aware of this claim prior to the inception of the second policy (through the Notice of Claim letter), and the lawsuit itself already had been filed prior to the inception of the third. Therefore, Owners clearly has

no duty to indemnify under the second and third policies. In terms of the first policy, as a result of the endorsements and policy provisions discussed above, there is a potential for coverage only if there is covered damage that occurred during the four-month period of February 20, 2001 through June 22, 2001. Groth has not established there is any damage here that meets the definition of "property damage" under the policy and, more importantly, has not met her burden of establishing that such damage occurred during this period of time. In other words, she has not established that there is any coverage under the Owners policy. Without such evidence, she cannot recover any of the Partial Stipulated Judgment from Owners.

In short, according to the plain and unambiguous terms of the policies, and the evidence produced in this case, there is no coverage under any of the Owners policies for this Partial Stipulated Judgment. Owners is entitled to judgment as a matter of law on all claims.

DATED this 16th day of August, 2013.

GRAIF BARRETT & MATURA, P.C.


By: /s/ Kevin C. Barrett
    Kevin C. Barrett
    Jennifer M. Bligh
    Attorneys for Defendant
    Owners Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2013, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECR registrants:

Michael J. Raymond
Raymond, Greer & Sassaman, P.C.
3636 N. Central Avenue, Suite 1070
Phoenix, AZ 85012-1940
*Attorneys for Plaintiff*


/s/ Carolyn J. Harrington

4823-0822-6325, v. 1