**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Patricia A. Groth,

Plaintiff,

v.

Owners Ins. Co.,

Defendant.

No. CV-12-1846-PHX-SMM

**MEMORANDUM OF DECISION AND ORDER**

Before the Court are three motions: Defendant's Motion for Summary Judgment (Doc. 22); Plaintiff's Motion for Summary Judgment (Doc. 31); and Defendant's Motion to Strike Affidavit of William Sublette (Doc. 39). All three motions are fully briefed. (Docs. 33, 35, 40, 42, 43, 44.) For the reasons that follow, all three motions are denied.[1]

**BACKGROUND**

This declaratory judgment action concerns a defectively constructed home in Lake Havasu City, Arizona. The following facts are undisputed unless otherwise noted. Sunmeadow Homes ("Sunmeadow") constructed the home at issue but subcontracted the rough grading and soil compaction, as well as the concrete work. (Doc. 34 ¶ 2.) After construction was complete, Sunmeadow received a certificate of occupancy from the City of Lake Havasu on April 12, 2000. (Docs. 1-1 at 5; 4 at 2.) On February 20, 2001,

---

[1] The parties' requests for oral argument are denied because there was an adequate opportunity to present written arguments, and oral arguments will not aid the Court's decisional process. LRCiv 7.2(f); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

Sunmeadow conveyed the home by warranty deed to the original homeowner, who sold the home to Plaintiff Patricia Groth ("Groth") on February 10, 2003. (Docs. 34 ¶ 4; 36 ¶ 5.)

On or about spring of 2005, Groth noticed damage to her kitchen floor tiles and after discussions with licensed contractors sometime in 2006, Groth learned that there was a significant problem with the foundation due to improper soil compaction and concrete slab construction. (Docs. 34 ¶¶ 6-7; 36 ¶¶ 8-10, 12-14, 16-18.) On December 26, 2006, counsel for Groth sent Sunmeadow a Notice and Opportunity to Repair pursuant to Arizona's Purchaser Dwelling Act. (Doc. 23-2 at 5-7.) On November 15, 2007, Groth filed suit against Sunmeadow in Mohave County Superior Court—Groth v. Sunmeadow Homes, Mohave Superior Court Case No. CV2007-2059 (the "underlying action")—alleging breaches of the implied warranties of habitability and workmanship. (Doc. 23-1 at 2-7.)

Sunmeadow's commercial general liability ("CGL") insurance carrier—Defendant Owners Insurance Company ("Owners")—defended Sunmeadow pursuant to a reservation of rights. (Doc. 36 ¶¶ 19-21.) Eventually, on February 15, 2012, Sunmeadow stipulated to its liability and executed an agreement with Groth in which Sunmeadow assigned its breach of contract claims to Groth in exchange for Groth's covenant not to execute the stipulated judgment against Sunmeadow. (Doc. 23-8.) This agreement was accepted by the trial court on April 13, 2012, and pursuant to the agreement's terms, Groth and Sunmeadow recited that "Sunmeadow hired a rough grading subcontractor responsible for soil compaction as well as a concrete subcontractor responsible for laying the foundation," and that the work performed by these subcontractors "fell below applicable construction standards." (Id. at 3, 5-6.) Groth and Sunmeadow further agreed that the "defects resulted in continuous and progressive property damage . . . from and after April 12, 2000 through present." (Id. at 6.)

On August 8, 2012, Groth filed suit against Owners in Maricopa County Superior Court seeking a declaration of Owners' duty to indemnify and supplemental relief pursuant to Arizona's Declaratory Judgments Act. (Doc. 1-1 at 4-8.) Owners removed on the basis of diversity. (Doc. 1.) The Court bifurcated the proceedings so that the issue of insurance coverage would be determined first, and would be followed by a determination of the

reasonableness of the consent judgment. (Doc. 10.) The parties have fully briefed cross-motions for summary judgment on the issue of coverage. (Docs. 22; 31; 33; 35; 40; 42.) Owners also filed a motion to strike Groth's expert affidavit which is fully briefed. (Docs. 39, 43, 44.)

## SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a finder of fact could reasonably resolve the issue in favor of either party. Anderson, 477 U.S. at 248, 250-51. One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported" issues. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The movant bears the initial burden of proving the absence of a genuine issue of material fact. Id. at 323. Where the movant would bear the burden of proof at trial, the initial burden is met by marshaling the evidence and foreclosing the possibility that a rational trier of fact could find for the non-movant. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157-58 (1970). For an issue as to which the non-movant would bear the burden of proof at trial, the movant can satisfy its initial burden by showing the absence of evidence to support non-movant's case. Celotex, 477 U.S. at 325. Either way, if the movant carries its initial burden, then the non-movant must designate admissible evidence in the record from which a jury could reasonably find in the non-movant's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

According to Arizona's choice of law rules, see Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187 (9th Cir. 2001), Arizona law governs this insurance contract action, see Beckler v. State Farm Mut. Auto. Ins. Co., 195 Ariz. 282, 286, 987 P.2d 768, 772 (App. 1999) (citing Restatement (Second) of Conflict of Laws § 193 (1971)).

**DISCUSSION**

The issue in this case is whether Owners has a duty to indemnify Sunmeadow for Groth's claims of defective home construction. Owners' indemnity obligation is contractual in nature and depends on the language of the policies. See Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship ("Paloma"), 230 Ariz. 29, 36, 279 P.3d 1191, 1198 (App. 2012). "The interpretation of an insurance contract is a question of law" in which the Court construes the policy terms "in a manner according to their plain and ordinary meaning" and "from the viewpoint of one not trained in law or in the insurance business." Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." Keggi v. Northbrook Prop. & Cas. Ins. Co., 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000).

Owners issued three different policies to Sunmeadow: the first policy was effective from June 22, 1995, to June 22, 2006 (the "First Policy" or the "Policy"); the second policy was effective from October 5, 2007, to October 5, 2008 ("the "Second Policy"); and the third policy was effective from October 5, 2008, to October 5, 2013 (the "Third Policy"). (Doc. 25 ¶¶ 1, 9, 12.) The parties agree that the earliest relevant policy period is June 22, 2000, to June 22, 2001. (Doc. 25 ¶ 2.) The First Policy provides in pertinent part that Owners "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Doc. 25-1 at 32.)

According to the terms of the Policy, insurance applies only if the " 'property damage' is caused by an 'occurrence' " and "occurs during the policy period." (Id.) "Property damage" is defined as "[p]hysical injury to tangible property," and "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 44-45.) Therefore, to establish coverage, there must be (1) physical injury to tangible property (2) during the policy period (3) that was caused by an accident. As explained below, it is undisputed that an accident resulted in property damage, but there is a genuine dispute on the coverage-dispositive issue of when this damage

occurred.

**I. The Binding Effect of Stipulated Facts**

As a preliminary matter, the Court must resolve the parties' dispute about the binding effect of facts that were stipulated to as part of Groth's and Sunmeadow's consent judgment, assignment of rights, and covenant not to execute—commonly referred to as a "Morris agreement," which derives its title from the eponymous case of United Servs. Auto. Ass'n v. Morris, 154 Ariz. 113, 741 P.2d 246 (1987). Associated Aviation Underwriters v. Wood, 209 Ariz. 137, 142 & n.1, 98 P.3d 572, 577 & n.1 (App. 2004). Generally, an insurer is free to litigate the issue of insurance coverage in a post-Morris agreement declaratory relief action over the insurer's indemnity obligation (a "post-Morris DRA"). Morris, 154 Ariz. at 120, 741 P.2d at 253. However, the court in Morris recognized that the divergent interests of insured and insurer presented a problem regarding the binding effect of facts stipulated to as part of the consent judgment. 154 Ariz. at 119-20, 741 P.2d at 252-53. On the one hand, there needed to be some binding effect "because claimants would never settle with insureds if they never could receive any benefit." Id. at 120, 741 P.2d at 253. On the other hand, insureds would generally be "willing to agree to anything as long as plaintiff promised them full immunity." Id. (quoting Miller v. Shugart, 316 N.W.2d 729, 735 (Minn. 1982)).

Morris balanced these competing interests by distinguishing the insured's liability to the claimant from the insurer's duty to indemnify the insured for that liability. Generally, the binding effect of stipulated facts depends on whether they prove the liability of the insured or the insurer. Consistent with "general principles of indemnification law," an insurer litigating coverage in a post-Morris DRA is bound by facts that establish the insured's liability to the claimant, but not by facts that would establish the insurer's liability to the insured. Id. If a stipulated fact establishes an element of coverage, it is not binding upon the insurer if the consent judgment could be sustained without that fact. Id.; see Farmers Ins. Co. of Ariz. v. Vagnozzi, 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983) (suspending the preclusive effect of collateral estoppel when "there is an adversity of interests"); see also Restatement (Second) of Judgments § 58 (1982). This prevents the insured from using a

Morris agreement as a vehicle "to obtain coverage that the insured did not purchase." Id.

For example, the tort claimant in Morris was shot after breaking into the insured's home. 154 Ariz. at 115, 741 P.2d at 248. The insurer reserved its right to deny payment based on whether the shooting was negligent or intentional; the former mental state was covered while the latter was the subject of an exclusion. Id. As part of the consent judgment, it was stipulated that the "actions during the shooting incident were either negligent or intentional." Id. at 120, 741 P.2d at 253. The consent judgment could have been sustained either because the shooting was negligent or because the shooting was intentional, but the insurer would be obligated to indemnify only in the former scenario. Therefore, a stipulation that the shooting was "negligent and thus covered" would have been "worthless" because there would have been a conflict of interest. Id. (citing Vagnozzi, 138 Ariz. at 448, 675 P.2d at 708).

Returning to the case at bar, Groth and Sunmeadow stipulated that the "the presence of low dust density (loose) self-grade fill soils in the top 30 inches of the sub-grade beneath the home," and "insufficient strength of the concrete floor slab" were "defects." (Doc. 25-8 at 6.) The parties further stipulated that these "defects resulted in continuous and progressive property damage"—namely the "cracking of the Home's concrete floor slabs"—"from and after April 12, 2000, through present."[2] (Id.) The binding effect of these stipulated facts upon Owners depends on Groth's cause of action in the underlying lawsuit: Breach of the implied warranties of habitability and workmanship. (Doc. 23-1 at 5-7.)

"The implied warranty of habitability and proper workmanship . . . is limited to latent defects which become manifest after [a] subsequent owner's purchase and which were not discoverable had a reasonable inspection of the structure been made prior to purchase." Richards v. Powercraft Homes, Inc., 139 Ariz. 242, 245, 678 P.2d 427, 430 (1984). "The burden is on the subsequent owner to show that the defect had its origin and cause in the builder-vendor . . . ." Id. This burden can be carried by showing "improper construction,

[2] Groth also claimed cracked floor-tiles and drywall, but those claims were settled and are no longer part of this case. (See Docs. 22 at 5; 25-8 at 32; 31 at 6.)

design or preparation." Woodward v. Chirco Const. Co., Inc., 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984) (quoting Cosmopolitan Homes, Inc. v. Weller, 663 P.2d 1041, 1045 (Colo. 1983)). "To prove the defect is to prove the claim." Rob Ellman & E.J. Peskind, Building Houses and Building Cases: The Implied Warranty of Workmanlike Construction and Habitability, 32 Ariz. Att'y 25, 26 (Jan. 1996).

The stipulated facts that are indispensable to Sunmeadow's liability to Groth are that the soil was defectively compacted and/or that the concrete slab was defectively reinforced. Owners is bound by these facts. Conversely, the stipulation that damage was "continuous and progressive" establishes the timing element of coverage; Sunmeadow's liability to Groth exists independent of timing. Owners is not bound by this liability-independent fact as the consent judgment could be sustained on grounds that do not establish coverage.

Groth argues that Owners is bound by the stipulated fact establishing timing because insurers are "bound for purposes of coverage by any issues determined by the stipulated judgment," Colo. Cas. Ins. Co. v. Safety Control Co. ("Colorado Casualty"), 230 Ariz. 560, 567, 288 P.3d 764, 771 (App. 2012), and cannot contest " 'the same legal and factual issues' that underlie the [stipulated] judgment," Wood, 209 Ariz. at 150, 98 P.3d at 585. Groth's reliance on these unqualified statements is misplaced. Neither of these cases departed from the fundamental distinction Morris drew between the liability of insured to claimant in tort and the liability of insurer to insured in indemnity. The coverage issues in Wood were "either identical to or directly overlap[ped] with essential liability questions"; therefore, "there were no alternative grounds to sustain [the] [stipulated] judgment . . . that would be outside the scope of [insurance] coverage." 209 Ariz. at 151-52, 98 P.3d at 586-87. The coverage issue in Colorado Casualty arose in the context of the insurer's outright denial of its duty to defend, and concerned "whether the stipulated judgment was a liability 'arising out of' [the insured's] operations"; the possibility of a conflict of interest between insured and insurer was dismissed in passing. 230 Ariz. at 567, 288 P.3d at 771.

In the present case, the coverage-dependent issue of when property damage occurred was not resolved by the stipulated judgment. See Morris, 154 Ariz. at 120, 741 P.2d at 253

(quoting Shugart, 316 N.W.2d 729, 735) ("Plainly, the [stipulated] 'judgment' does not purport to be an adjudication on the merits."). Thus, Owners is not bound by a stipulated fact extraneous to the underlying judgment, and may litigate the unresolved issue of coverage.

**II. There is a Four-Month Window of Coverage for Groth's Claims**

Both the Second and Third Policies stated that there was insurance only to the extent that the insured had no knowledge that property damage had begun to occur "in whole or in part." (Doc. 25 ¶¶ 10-11, 13.) It is undisputed that Groth submitted a formal notice of claim letter to Sunmeadow in December 2006, which made Sunmeadow aware that property damage had begun to occur. (Docs. 23 ¶¶ 6-10; 36 ¶¶ 6-10.) It is also undisputed that the Second Policy incepted almost a year later on October 5, 2007, and that the Third Policy incepted a year after that. (Doc. 25 ¶¶ 9, 12.) Therefore, there cannot be any coverage under the Second and Third Policies because Sunmeadow already had knowledge that property damage had begun to occur.

As mentioned above, the earliest relevant period of the First Policy is June 22, 2000, to June 22, 2001. (Doc. 25 ¶ 2.) One of the exclusions in the First Policy eliminates coverage for "property damage" to "[p]roperty you own, rent or occupy." (Doc. 25-1 at 34.) It is undisputed that Sunmeadow retained title to the home until it was first sold on February 20, 2001. (Doc. 34 ¶ 4.) Owners contends this means there was no coverage for property damage until after the initial sale; Groth does not dispute this contention. (Docs. 22 at 10; 31 at 9). The Court agrees with Owners. The exclusion plainly bars from coverage property damage to property owned by the insured, and the insured in this case owned the property at issue until it was sold. Therefore, to establish coverage under the First Policy, Groth must show that an occurrence caused property damage after February 20, 2001.

Similarly, the First Policy excluded from coverage " 'property damage' to 'your work' arising out of it or any part of it" unless the "damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Doc. 25-1 at 35.) However, on June 22, 2001, an endorsement was added that eliminated the subcontractor exception. (Docs. 25 ¶ 6; 25-2 at 33.) Since "your work" is defined as "[w]ork or operations

performed by you or on your behalf," Owners argues that the endorsement eliminated coverage for any construction work performed by subcontractors that damaged the house after the endorsement was added. (Doc. 22 at 10-11.)

Groth acknowledges that the endorsement purports to terminate coverage for property damage that occurred after June 22, 2001, which resulted from the work of subcontractors. (Doc. 31 at 7; 35 at 2 & n.1.) While the effect this endorsement has on curtailing the amount of recoverable damages is disputed, see infra Part V, its effect on the window for coverage is undisputed. The only property damage claimed by Groth was the result of subcontractor work; there is no coverage for such damage if it occurred after June 22, 2001. Therefore, Groth must prove that the property damage to her house occurred between February 20, 2001, and June 22, 2001, and that such damage was caused by an accident.

Having properly delimited the time-frame for which there may be coverage, the Court turns its attention to whether there was an occurrence that resulted in property damage.

## III. The Subcontractor's Work was an Occurrence that Caused Property Damage

Arizona draws a distinction between faulty workmanship and damage resulting therefrom: only the latter may constitute an occurrence. Lennar Corp. v. Auto-Owners Ins. Co., 214 Ariz. 255, 261-62, 151 P.3d 538, 544-45 (App. 2007); U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co., 163 Ariz. 476, 482, 788 P.2d 1227, 1233 (App. 1989). Lennar is particularly instructive because it interpreted policy terms identical to the terms in this case. See 214 Ariz. at 261-62, 151 P.3d at 544-45. The insurers in Lennar "argue[d] that the damage resulting from faulty work does not constitute an occurrence under the policies because such damage is the natural consequence of the negligent construction and thus cannot be an occurrence separate from that faulty construction." Id. at 262, 151 P.3d at 545. The court rejected that argument because it ran "contrary to the plain language of the policies." Id. at 263, 151 P.3d at 546. The court explained:

> The policy language defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Faulty construction may constitute a "general harmful condition." Thus, when "accidental" property damage results from continued exposure to faulty construction, that property damage is an "occurrence" as defined by the

plain terms of the policy.

Id.

It is undisputed that the combination of deficiently compacted soils and the failure to reinforce the concrete slab caused differential movement, or "settling," of the foundation, thereby distressing the property. (Doc. 34 ¶ 6.) Owners posits that the soil compaction and the concrete slab are not an occurrence because they are faulty work. (Doc. 22 at 12.) As far as Owners is concerned, it has already settled for any damages that resulted from these faulty conditions. (Id.) Groth agrees that the soil compaction was faulty, but argues that this faulty construction resulted in property damage: settling of the foundation. (Docs. 42 at 6.)

The Court agrees with Groth. Faulty soil compaction in this case constitutes a "general harmful condition"; therefore, the improper soil compaction is an "accident," which in turn means the subcontractor work was an "occurrence." It is undisputed that exposure to the improperly prepared soils resulted in settling of the foundation, thereby causing distress to the home. At some point, the strain damaged the concrete slab. Thus, physical injury "resulted from exposure to faulty construction." Lennar, 214 Ariz. at 263, 151 P.3d at 546.

The remaining question is whether the property damage occurred during the aforementioned four-month window of coverage.

**IV. The Timing of Property Damage is a Genuinely Disputed Material Fact**

The principal thrust of both parties' summary judgment motions concerns the coverage-dependent issue of when the property damage occurred. Owners asserts that there is no admissible evidence in the record from which a trier of fact could find that property damage occurred during the window of coverage. Groth argues that property damage began as soon as the home was completed and has continued unabated ever since. In support of her position, Groth points first to the stipulated fact that the defective construction "resulted in continuous and progressive property damage."

The stipulated fact that the faulty soil compaction resulted in "continuous and progressive property damage" is irrelevant to Sunmeadow's liability to Groth in the underlying consent judgment; Sunmeadow is liable for breaching the implied warranties of

habitability and workmanship by virtue of the defective soil preparation. However, this fact is essential to establishing insurance coverage. Since the consent judgment can be sustained without regard to this stipulated fact, it is not binding upon Owners. Therefore, Groth cannot "merely rest or rely on the Morris agreement or consent judgment" to establish timing for coverage purposes. Wood, 209 Ariz. at 160, 98 P.3d at 595.

Groth's second piece of evidence is an expert affidavit from geotechnical engineer Dr. William Sublette (the "Sublette Affidavit"). However, the Court explained in its First Case Management Order that it did not expect experts would be needed regarding the existence of coverage. (Doc. 10 at 2.) The Court further instructed the parties to jointly call the Court before July 26, 2013, if either party concluded experts would be needed. (Id.) Groth arranged for a telephonic conference on July 22, 2013, at which she asserted a possible need for an expert soil engineer regarding an underlying factual issue. (Doc. 19.) Owners argued that experts were neither necessary nor appropriate, and further argued that Groth was seeking relief under Federal Rule of Civil Procedure 56(d), or alternatively, that the facts froze at the time the Morris agreement was executed. (Id.) The Court deferred ruling on the matter unless and until Groth retained an expert and there was a motion to strike. (Id.)

Groth ultimately retained Dr. Sublette to opine about the timing of property damage, and disclosed his report on the day of the dispositive motion deadline. (Doc. 39.) Groth relied on that report in her initial summary judgment motion, which was subsequently withdrawn by stipulation based on Owners' belief that the Court would only permit expert testimony pursuant to a Rule 56(d) motion. (Doc. 42 at 7 n.2.) Groth promptly requested a transcript of the July 22, 2013, proceedings. (Doc. 26.)

The Sublette Affidavit resurfaced as an exhibit attached to Groth's controverting statement of facts in opposition to Owners' summary judgment motion. (See Doc. 36-1 at 10-11.) Having reviewed the transcript of the July 22 proceedings (Doc. 29), Groth contended that her use of expert testimony was not contingent upon a Rule 56(d) motion, and that the Court allowed her to retain an expert while preserving Owners' objections. (Docs. 35 at 8 n.4; 42 at 7 n.2.) Dr. Sublette opines in relevant part:

> the significantly deficient compaction of the soil beneath the slab foundation more likely than not caused settlement of the concrete slab foundation to occur immediately upon load bearing stresses, i.e., from the date of construction of the Groth home. The destabilized soil caused differential settlement of the foundation, which caused movement in the concrete slab, thus physically altering the property in a material manner.

(Doc. 36-1 at 11.) Owners promptly filed a motion to strike the Sublette Affidavit. (Doc. 39.)

As a procedural matter, "[a]n objection to (and any argument regarding) the admissibility of evidence offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum and not in a separate motion to strike or other separate filing." LRCiv 7.2(m)(2). Owners' motion to strike is unauthorized and its content should have been presented in its reply in support of its summary judgment motion. In this unauthorized motion to strike, Owners argues the use of experts violated the provisions of the scheduling order, and renewed its position that Rule 56(d) is the only procedural avenue for the use of expert testimony. (Doc. 39 at 3-4.) Owners further argues that the Sublette Affidavit did not contain proper expert testimony, and accuses Groth of gamesmanship by submitting "nothing more than a 'sham affidavit' that is one degree removed." (Id. at 4-5.) Finally, Owners asserts that if its motion to strike is not granted, briefing must be suspended so that it may retain its own expert. (Id. at 5-6.)

As to the proposition that the factual record—as it pertains to coverage—became immutably frozen at the time the Morris agreement was executed, Owners seeks to use Morris as both a sword and a shield. While not bound by a stipulated fact that would otherwise conclusively establish coverage, Owners argues that Groth is precluded from introducing evidence to show coverage exists. The Court disagrees. "The effect of [a Morris agreement] [is] to substitute the claimant for the insured[] in a claim against the insurer." Morris, 154 Ariz. at 120, 741 P.2d at 253 (quoting Shugart, 316 N.W.2d 729, 735). In a derivative coverage action, the insured would not be precluded from introducing evidence that was not developed as part of the underlying action; so too is the claimant not precluded.

Owners' argument that Groth cannot introduce expert opinion evidence about when damage occurred because Owners' reservation of rights was based on the evidence as it

existed at the time the Morris agreement was executed is unpersuasive. The insured's claim against the insurer for breach of the duty to indemnify, while derivative of the insured's liability, is nevertheless distinct from the insured's liability to the claimant. Stated differently, the elements of the insured's liability to the claimant will rarely be identical to the elements of the insurer's duty to indemnify the insured for that liability.

As applied to this case, Sunmeadow's liability exists independent of when property damage occurred; Owners' duty to indemnify, however, hinges on that very issue. Since the timing element of coverage was not determined by the underlying action, neither Owners nor Groth—as Sunmeadow's assignee—are bound or otherwise estopped from litigating and presenting evidence about the necessarily unresolved matter of coverage. See Morris, 154 Ariz. at 120, 741 P.2d at 253. Notably, Owners' rule not only erases the carefully drawn distinction between liability in the underlying action and coverage in a derivative DRA, but also defeats the judicial efficiency gained by "combin[ing] two potential lawsuits" and "dispens[ing] with the delay and expense of two trials on the same issue." Vagnozzi, 138 Ariz. at 446, 675 P.2d at 706 (discussing utility of collateral estoppel in the context of a consent judgment pursuant to an outright denial of the duty to defend).

Owners next argues that the Sublette Affidavit is a sham because it is contrary to Groth's sworn testimony and seeks to establish new facts. (Doc. 39 at 4-5.) The Court disagrees. The Sublette Affidavit does not establish any new facts, but offers an opinion about when damage may have occurred. The fact that Groth, as a lay person, answered an interrogatory by stating she did not know when damage occurred is not contrary to an expert's opinion on the matter. Likewise, Owners' argument that the Sublette Affidavit does not contain proper expert testimony is unavailing. While "[o]nly admissible evidence may be considered in deciding a motion for summary judgment," Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 988 (9th Cir. 2006), the focus is not "on the admissibility of the evidence's form," but "on the admissibility of its contents," Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The contents of the Sublette Affidavit, if not stricken, would be admissible if the requirements of Federal Rule of Evidence 702 are met.

The Court finds Dr. Sublette is qualified to opine about soil mechanics and that his knowledge is relevant to a fact at issue. See Fed. R. Evid. 702(a). The Court further finds that by visiting Groth's home and reviewing a Geotechnical Services Report, Dr. Sublette possessed sufficient data upon which to render his opinion. See id. 702(b). Based on the report prepared for the underlying litigation (Doc. 32-1 at 27-31) and referenced in the instant affidavit (Doc. 36-1 at 11), the Court finds that Dr. Sublette's opinion testimony has a sufficiently reliable basis for consideration by the finder of fact. See id. 702(c)-(d). Thus, the Sublette Affidavit, if not stricken, can be considered because its contents are admissible.

Assuming without deciding that the Sublette Affidavit violated the terms scheduling order, Dr. Sublette opines that it is more likely than not that the deficiently compacted soils caused settling as soon as the home was constructed. Viewing this evidence in the light most favorable to Owners, a reasonable jury could conclude that the settling did not occur until after June 2001. As a result, if the affidavit is not stricken, then there is a disputed fact as to when the property damage occurred. Conversely, if the Sublette Affidavit is stricken, there is no evidence in the record that property damage occurred during the window of coverage, and Owners would be entitled to summary judgment on the issue of coverage. Striking the Sublette Affidavit is therefore a case-dispositive sanction.

Owners' contention that Rule 56(d) is the exclusive procedural avenue for considering expert testimony at this point is misplaced: in addition to Rule 56(e), the Court enjoys "broad discretion in supervising the pretrial phase of litigation" and in determining "the preclusive effect of a pretrial order." Jorgensen v. Cassiday, 320 F.3d 906, 913 (9th Cir. 2003) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992)). Groth attempted to comply with scheduling order and could have believed her conduct was compliant. Disposing of the case on grounds unrelated to its merits would be unduly harsh sanction considering the relative hardships to the parties. Consequently, Owners' motion to strike is denied. However, in the interests of fairness, Owners will be allowed to retain its own expert, but Groth will not be permitted a rebuttal.

The Court need not resolve, and expresses no opinion on, whether the "continuous-

trigger theory" of coverage employed in Wood has expanded beyond the narrow "context of toxic-exposure cases," 209 Ariz. at 165, 98 P.3d at 600, because the factual predicate upon which this theory depends—continuous damage immediately upon exposure to a harmful condition—is genuinely disputed.

**V. The Parties Arguments About Damages are Premature**

One final matter concerns the disjunction between liability and coverage in this case: Sunmeadow's liability for breaching the implied duties of habitability and workmanship only partially overlaps with the coverage afforded by the Policy. Specifically, Sunmeadow is liable for the defective soil compaction, but Sunmeadow is only insured for property damage that resulted from that defect. However, the stipulated judgment is itemized and includes the cost of repairing both the defective soil and the resultant damage.

Owners argues that it cannot be obligated to indemnify Sunmeadow for the entire amount of the stipulated judgment for two reasons: first, it would saddle Owners with indemnifying Sunmeadow for something that outside the insuring agreement. Second, Owners argues that its indemnity obligation is limited to quantifiable damage that occurred during the four-month window, not the cost of replacing the entire slab. Groth's position is that if she proves coverage, then Owners is liable for the entire stipulated judgment.

These arguments go to damages, but the amount of stipulated damages is irrelevant during the coverage phase of a post-Morris DRA. See Morris, 154 Ariz. at 120, 741 P.2d at 253. Rather, the issue of damages is the subject of the reasonableness hearing. See Himes v. Safeway Ins. Co., 205 Ariz. 31, 39, 66 P.3d 74, 82 (2003). As such, the parties' damages arguments are premature at this phase of the proceedings.

**CONCLUSION**

There is a triable issue of fact as to whether the improperly compacted soils caused property damage between February 20, 2001, and June 22, 2001.The Court issues its Order Setting Final Pretrial Conference contemporaneously herewith. If Groth carries her burden of proof at trial, then this post-Morris DRA will proceed to the reasonableness phase pursuant to the Court's First Case Management Order. (Doc. 10 at 1.)

Accordingly,

**IT IS HEREBY ORDERED denying** Owners' Motion to Strike Affidavit of William Sublette. (Doc. 39.) Owners shall make its expert disclosures, if any, no later than **Friday, July 18, 2014**.

**IT IS FURTHER ORDERED denying** Owners' Motion for Summary Judgment. (Doc. 22.)

**IT IS FURTHER ORDERED denying** Groth's Motion for Summary Judgment. (Doc. 31.)

DATED this 23rd day of May, 2014.

Stephen M. McNamee
Senior United States District Judge